[Civ. No. 662. Third Appellate District.—April 14, 1910.]

JOHN LOEFFLER, Appellant, v. W. H. WRIGHT et al., Respondents.

ACTION BASED ON LEASE—EXPIRED TERM—OPTIONS TO RENEW AND PURCHASE—DAMAGES FOR WITHHOLDING—CAUSE OF ACTION NOT STATED.—Where plaintiff's alleged rights to have a lease with options to renew and to purchase declared valid, and to recover damages for withholding possession of the leased land and the improvements thereon made by the lessee, are based upon the terms of the lease, the original term of which had expired, the plaintiff must by appropriate averments bring himself within its terms, and where he fails to allege any facts showing that the lease was renewed or extended, or that the options to renew or to purchase were in any way exercised, or that any rent was paid thereunder, it states no cause of action, and a demurrer to the complaint was properly sustained.

ID.—NATURE OF ACTION—DAMAGES FOR FAILURE SPECIFICALLY TO PERFORM AGREEMENT TO LEASE.—The action is essentially one to recover ·damages for a failure specifically to perform an agreement to lease for a period of years; and a person seeking such relief must show that he placed himself in such a position as to exact performance from the other party.

ID.—TIME FOR RENEWAL—NOTICE OF ELECTION.—Under a contract for a renewal of the lease, as distinguished from an extension of the lease, the lessee desiring to renew must exercise his option to do so by giving notice of his election to renew before the expiration of the original term.

ID.—OPTION TO PURCHASE—ELECTION AND EQUITABLE RIGHT MUST APPEAR.—An option to purchase contained in the lease must, for its enforcement, not only be alleged to have been exercised by notice of the election to purchase during the life of the lease, but also an offer to pay the purchase money, or willingness to do so, must be alleged, and it must be further alleged that the contract of purchase was just and equitable.

ID.—BANKRUPTCY OF LESSOR—JURISDICTION OF DISTRICT COURT.—When the corporation lessor was adjudged a bankrupt, the United States district court acquired complete and exclusive jurisdiction of the corporation's property, and to determine all controversies between the corporation and third parties affecting the assets in its custody.

ID.—COMPOSITION CONFIRMED—REVESTITURE OF PROPERTY—COLLATERAL ATTACK FOR IRREGULARITY.—A composition confirmed by the district court, having the effect to revest title of the corporation to its remaining assets, cannot be collaterally attacked in a state court

for irregularity in the order of composition not appearing on its face.

Id.—EXCLUSIVE REMEDY IN FEDERAL COURT FOR FRAUD—APPELLANT ESTOPPED.—The exclusive remedy for fraud in obtaining the order of composition was by a proceeding in the district court under the bankrupt act providing for its annulment for fraud discovered within six months; and where appellant availed himself of that remedy, and his application was denied by the district court, the appellant cannot assail it in the state court, whether the composition be valid or a nullity.

Id.—RELIEF AGAINST DEED OF TRUST FOR MISREPRESENTATION OF CONTENTS—STATUTE OF LIMITATIONS—NOTICE OF CONTENTS.—Relief against a deed of trust by the corporation lessor for fraud upon the plaintiff as lessee, consisting of misrepresentation as to its contents, was barred within three years after actual or constructive notice of the contents of the deed.

Id.—NOTICE OF DEED OF TRUST—SIGNATURE AND ACKNOWLEDGMENT BY PLAINTIFF AS SECRETARY—RECORD.—The complaint shows both actual and constructive notice to plaintiff of the contents of the deed of trust, by alleging that it was signed and acknowledged by plaintiff as secretary of the corporation lessor, and was recorded, upon such acknowledgment, before the lease was executed, and presumably more than three years before the commencement of the action.

Id.—DATE OF FILING ORIGINAL COMPLAINT NOT SHOWN—PRESUMPTION—INTENDMENTS UPON APPEAL.—Though the date of the filing of the original complaint is not shown by the record upon appeal, it must be assumed, in view of the intendments in favor of the ruling of the court below against the plaintiff, that the action was brought more than three years after the execution of the deed of trust.

Id.—INSUFFICIENT AVERMENT—DATE OF DISCOVERY—REASONABLE DILIGENCE NOT AVERRED—PRESUMPTION.—It is not sufficient for the plaintiff merely to allege that he did not discover the fraud until a certain date. It must also appear that the discovery could not have been made by the exercise of reasonable diligence; and the plaintiff is presumed to have known all that reasonable diligence would have disclosed.

Id.—DEMURRER SUSTAINED WITHOUT LEAVE TO AMEND—DISCRETION NOT ABUSED—PREVIOUS DEMURRERS—LEAVE NOT ASKED.—The sustaining of the demurrer without leave to amend is within the discretion of the court below, subject only to review in case of clear abuse. No abuse of discretion appears where it appears that plaintiff made three ineffectual attempts to state a cause of action, and his record upon appeal does not·disclose that he asked leave to amend when the present demurrer was sustained.

13 Cal. App.—15

APPEAL from a judgment of the Superior Court of Contra Costa County. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

Joseph C. Meyerstein, H. U. Brandenstein, and W. S. Tinning, for Respondents.

BURNETT, J.—Several diverse and somewhat uncorrelated acts alleged to be fraudulent are made apparently the basis of appellant's claim for relief and much evidentiary matter is pleaded in the second amended complaint, but it is contended by him that "There is only one cause of action set forth therein, and that is to have plaintiff's lease and option to purchase declared valid and superior to the claims of all the other defendants, and for damages for depriving plaintiff of the possession of said land so leased and covered by his option to purchase and the valuable improvements thereon including his hotel, pickle factory, machinery, stock and supplies."

Adopting this theory of the complaint, the essential facts may be somewhat briefly presented. The initial transaction was with a corporation known as the Jersey Island Packing Company. It is alleged that three of the directors of said corporation who were the principal stockholders and are defendants herein, on and prior to the eleventh day of June, 1903, made certain false and fraudulent representations to plaintiff as to the financial condition of said corporation and thereby induced plaintiff to purchase three thousand and sixty shares of the capital stock thereof for the sum of $91,800 and to make valuable improvements upon the real estate belonging to said corporation known as the Jersey Island Tract "and which was the same land that was thereafter leased to plaintiff for the term of seven and one-half years, on the 16th day of December, 1903, and which on the same day the said corporation agreed to sell to plaintiff at any time during the aforesaid period of seven and one-half years, as fully appears in said lease and agreement to sell, a copy of which is hereto attached and marked 'Exhibit A.' That thereafter on or about the —— day of December, 1903,

the said corporation . . . agreed to cancel the agreement whereby plaintiff purchased said stock and made said improvements upon said realty, and to return to plaintiff the purchase price thereof, save and except the sum of three thousand dollars, and the cost price of said improvements, amounting to twenty-six thousand dollars more, which the directors claimed said corporation was unable to pay and in consideration thereof the said corporation then and there agreed to and with plaintiff that it would lease to him said one hundred acres of the aforesaid realty upon which said improvements were located for a period of seven and one-half years, and give him an option and agreement whereby he might purchase said land and improvements at any time within said period for the sum of twenty thousand dollars; and that the plaintiff agreed to said proposition on the part of said corporation, and further agreed that upon the execution and delivery to him of said lease and agreement of sale he would return his stock which had been theretofore sold to him as aforesaid, to the officers of said corporation, and resign his position as director of said company; and that after such agreement had been duly made as aforesaid, the said manipulators, W. H. Wright, Frank V. Wright and H. Bendel, acting for and on behalf of said corporation, refused to make, execute or deliver said lease to plaintiff, according to said agreement, for the reason that it would interfere with and take precedence of the fraudulent trust deed which said manipulators and wreckers had fraudulently designed to have executed, as hereinbefore set forth.

"That after the manipulators refused, as aforesaid, to carry out and execute said option to buy and agreement to lease, said fraudulent deed of trust was gotten up, as hereinafter set forth, and the same was placed on record on said 19th day of September, 1903, in order that the same might take precedence of said option and lease, without plaintiff's knowledge of its existence or recordation, and that thereafter on the 16th day of December, 1903, the said corporation in pursuance of said agreement so previously made by and through its proper officers and in pursuance of the resolution of its said board of directors, made, executed and delivered to plaintiff in consideration of the facts and premises hereinbefore stated, the lease and agreement to sell said real

property as the same is fully set forth and described in said
Exhibit A hereunto attached; that said agreement of sale
and lease is still in full force and effect, and binding upon
said corporation and all the parties hereto, and superior to
said fraudulent deed of trust, all claims of the creditors of
said bankrupt corporation, and the rights of said trustees
to sell said Jersey Island Tract for any purpose whatsoever.''

Certain difficulties arise from a consideration of these aver-
ments and of the said exhibit ''A'' attached to the complaint.
It is averred, for instance, that the corporation agreed, in
December, 1903, to execute this lease and option to buy for
a period of seven and one-half years, and that thereafter the
directors *refused* to make, execute or deliver said lease to
plaintiff. In the very next paragraph it is positively alleged
that the corporation, ''in pursuance of said agreement so
previously made by and through its proper officers and in
pursuance of the resolution of its said board of directors,
made, executed and delivered to plaintiff'' the lease and
agreement to sell said real property.

It further appears by express allegation that on the six-
teenth day of December, 1903, this land was leased to plain-
tiff for the term of seven and one-half years, and when we
turn to the said exhibit we find it recited therein that ''the
owner of the land shall and will upon the premises and con-
ditions herein stated suffer and permit the occupier (John
Loeffler) to enter on and occupy from the date hereof until
the 31st day of December, A. D. 1904,'' the said land. The
lessee was granted the privilege, however, of renewing the
lease ''for a further period of ten years at the expiration
of this lease.''

For the refusal of the directors to execute said lease the
reason is assigned that it would take precedence of the said
fraudulent trust deed. It appears that said refusal occurred
in December, 1903, and it is alleged that afterward said
fraudulent deed of trust was gotten up without plaintiff's
knowledge of its existence, whereas the fact is, and it is
shown by the complaint, that said deed was signed and ac-
knowledged by plaintiff as the secretary of said corporation
on the eleventh day of September, 1903, and recorded on
the nineteenth day of the same month.

Again, plaintiff claims the said lease was in full force and effect when the second amended complaint was filed in 1908, but by its terms it expired on December 31, 1904. There is no allegation that the lease was renewed or that plaintiff exercised his option to continue the term or notified the lessor or defendants that he desired to exercise the privilege 'of extending the lease. There is no allegation that he paid or tendered the rent that was due under the terms of said lease.. The complaint is silent as to any offer to purchase said property on the part of plaintiff as he was authorized to do by said lease.

Notwithstanding these omissions plaintiff seeks to recover damages for the conduct of defendants in withholding the said property from plaintiff for the period of three years from the "21st day of March, 1904, up to and about . . . day of May, 1905, when the said corporation was adjudged a bankrupt" and from the latter date till the beginning of this action.

It is clear that since the right to the possession of said property is grounded in said lease, plaintiff by appropriate allegations must bring himself within its terms. The action is essentially to recover damages for a failure specifically to perform an agreement to lease for a period of years, and it is elementary that one seeking such relief must show that he placed himself in such a position as to exact performance from the other party.

In *Shamp* v. *White,* 106 Cal. 220, [39 Pac. 537], it is said that "where the contract between the parties is for a renewal as distinguished from an extension of the lease, it is incumbent upon the lessee desiring to exercise his option for renewal to give notice of his election before the expiration of the original term."

So, if we regard that feature of the complaint relating to the option to purchase the land, the same condition is presented. There is no allegation of an offer to pay the consideration or the willingness to do so or that the contract was just and equitable.

Again, it appears that the corporation, in May, 1905, was adjudged an insolvent, and that the claims of plaintiff "against said corporation have been duly adjudicated and

filed with the clerk of the United States District Court in and for the Northern District of California."

It has been held that "The acts of Congress relating to bankruptcy, so far as are concerned matters within their purview, are paramount, and the jurisdiction of the federal courts in bankruptcy, when properly invoked in the administration of the affairs of an insolvent person or corporation, is essentially exclusive." (*In re Watts,* 190 U. S. 1, [23 Sup. Ct. Rep. 718].)

The filing of a petition in bankruptcy is a *caveat* to all the world and in effect an attachment and injunction, and upon adjudication and qualification of the trustee, the bankrupt's property is placed in the custody of the bankruptcy court, and title becomes vested in the trustee. (*Miller* v. *Nugent,* 184 U. S. 1, [22 Sup. Ct. Rep. 269].)

It would seem from the foregoing postulates, as urged by respondents, that when said corporation was adjudged a bankrupt the said United States district court immediately acquired full, complete, and exclusive jurisdiction of the corporation's property and to determine all controversies between that company and third parties affecting the assets in its custody. It is true, though, that it further appears that after the adjudication of insolvency a composition was confirmed by said district court and the proceedings there closed. The effect of this was to revest in the bankrupt title to all the property, and it would seem to follow that plaintiff was at liberty to pursue his remedy against the company and its assets, unless its assets had been formally transferred, which is not alleged. Plaintiff pleads, indeed, the irregularity of said composition, but it is not contended that this irregularity appeared on the face of the proceedings. Respondents' position, therefore, appears sound that this order of composition cannot be successfully assailed in this collateral way in a state court.

Desiring to have the order of composition set aside, appellant should have proceeded in said district court under the bankrupt act providing for the annulment of a composition once confirmed upon the ground of fraud where the fraud has come to the knowledge of a party since the confirmation, and where he moves within six months. (*In re Jersey Island Packing Co.,* 152 Fed. 839, 18 Am. Bankr. Rep. 412.)    As

appears in the last-cited case, this was in fact the course
pursued by appellant, but his application to have the com-
position in question set aside was denied by the said district
court.   In either aspect of the situation, therefore, whether
the composition be valid or a nullity, it would seem that
plaintiff cannot prevail in this proceeding.

But regarding only the transaction preceding the adjudi-
cation of insolvency and directing our attention to the alle-
gations as to the disturbance by defendants of plaintiff's
possession before the expiration of the year, for which the
land was leased, we are involved in difficulty in determining
what damage was suffered by plaintiff for the balance of
the year, for the reason that this is not segregated from the
whole loss alleged to have been incurred up to the time of
said adjudication of insolvency, to wit, May, 1905.   But if
we could make the division there is an insuperable obstacle
to recovery in the fact that prior to the execution of the
lease, as we have already seen, a deed of trust was executed
by said corporation of said property to certain of the defend-
ants.   If the property was conveyed to these grantees, accord-
ing to the terms of said deed, in September, 1903, it would
take precedence, of course, over the said lease executed by
the grantor in December, 1903.   It is true that plaintiff
seeks to avoid said deed on the ground of fraud, but the
action should have been brought within three years.   (Code
Civ. Proc., sec. 338.)   Plaintiff seeks to avoid the bar of the
statute by alleging that he did not discover the fraud of
which he complains till some time in January, 1905, but the
fraud consisted in the misrepresentation as to the contents
of said deed.   He must be deemed to have had actual notice
of this, as the deed was signed by him, and, in addition, by
the recordation of the deed he would have constructive notice
thereof.   The date of the filing of the original complaint does
not, indeed, appear, but the intendments being in favor of
the ruling of the court below, we must assume that the action
was brought after the expiration of three years from the
execution of said deed.

Again, it is not sufficient for the plaintiff to allege that
he did not discover the fraud till a certain date.   The rule
is that while the cause of action to set aside an instrument
on that ground is deemed not to have accrued until the dis-

covery of the facts constituting the fraud, it must also appear as well that the discovery could not have been made by the exercise of reasonable diligence. And plaintiff is presumed to have known all that reasonable diligence would have disclosed. (Code Civ. Proc., sec. 338, subd. 4; *Simpson* v. *Dalziel,* 135 Cal. 599, [67 Pac. 1080].)

The foregoing defects in the complaint and others which we deem it unnecessary to consider are covered by the demurrer of respondents which we think was properly sustained.

Appellant also complains because the court sustained the demurrer without leave to amend. This is a matter, however, within the discretion of the lower court and cannot be reviewed except for an abuse of that discretion. Plaintiff had made three attempts to present properly his cause of action. He had failed in each and the court was justified in concluding that any further effort would be equally futile. Indeed, the inference would be natural and reasonable that his failure arose from the want of facts rather than from lack of skill in stating them. Besides, it does not appear that plaintiff invoked the favor of the court to the end that another amended complaint might be filed.

The following quotations from the decisions of the supreme court are in harmony with this view: In *Martin* v. *Thompson,* 62 Cal. 622, it is said: "We cannot say the court abused its discretion in disallowing plaintiff's motion to file a second amended complaint. It does not appear from the transcript that any proposed amendment was served or presented, or that the notice of motion pointed out the precise amendment which plaintiff would ask leave to make or file."

In *Dukes* v. *Kellogg,* 127 Cal. 563, [60 Pac. 44], it is said: "The power of the court in allowing parties to an action to file amended pleadings is largely a matter of discretion. Here plaintiff had three opportunities to make a good complaint and failed. Three failures to make a good complaint fairly indicate that a fourth attempt would also be unavailing. The proposed amendment, or proposed amended pleading, was not tendered to the court for inspection, and we see nothing erroneous in the action of the court in refusing to allow further amendments. The failure to make a good

pleading probably arises in a lack of facts rather than in the fault of the pleader.''

And the later expression, found in *Stewart* v. *Douglass,* 148 Cal. 512, [83 Pac. 699], is: ''When a demurrer is sustained to a complaint it is within the discretion of the court either to allow an amended complaint to be filed or to give judgment forthwith in favor of the defendant. The appellate court will in every such case sustain the action of the court below, whatever course it may take, unless it is made to appear by the record that there has been an abuse of discretion. The plaintiff merely asked leave to file an amended complaint, and, so far as the record discloses, did not show that there were any allegations of fact omitted from the complaint to which the demurrer had been sustained which, if inserted therein, would in any respect change its legal effect, nor make any statement whatever of the grounds or reasons for making the application for leave to amend. There was clearly no abuse of discretion shown. (*Kleinclaus* v. *Dutard,* 147 Cal. 245, [81 Pac. 516].)''

In the case at bar there is nothing to show that appellant indicated in the court below any desire to file another amended complaint. We must assume that he made no such application, and hence it is out of the question to say that there was any abuse of discretion in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 13, 1910.